# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| GREAT NECK SAW MANUFACTURERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> STAR ASIA U.S.A., LLC, <br><br> Defendant. | Case No. C06-647Z <br><br> ORDER |

THIS MATTER comes before the Court pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), to construe certain terms in U.S. Patent No. 7,040,022. Having reviewed the briefs of both parties and all other papers filed in connection with claim construction, and having heard the arguments of counsel, the Court now enters the following order.

**Background**

Plaintiff Great Neck Saw Manufacturers, Inc. ("Great Neck") is a New York corporation that distributes various folding utility knives under the brand name "Sheffield." *See* Fourth Amended Complaint at ¶ 1 (docket no. 60); *see also* http://www.greatnecksaw.com. Defendant Star Asia, U.S.A., LLC ("Star Asia") is a Washington corporation that imports and distributes a folding utility knife under the trademark "Titan." Answer to Fourth Amended Complaint at ¶ 2 (docket no. 63); *see also* Complaint at ¶¶ 3 & 5 (docket no. 1) in *Star Asia U.S.A., LLC v. Great*

ORDER - 1

1 *Neck Saw Manufacturers, Inc.*, Case No. C05-505Z (consolidated with C05-2097Z & C06-647Z, under the highest number). Great Neck is the assignee of one utility patent and seven design patents for a folding utility knife. The utility patent is the focus of this Order.[1]

The utility patent at issue, U.S. Patent No. 7,040,022 ("the '022 Patent"), contains 31 claims, three of which are independent and 28 of which are dependent. Great Neck alleges that Star Asia has infringed Claims 26 to 31. *See* Plaintiff's Statement of Asserted Claims at 2 (docket no. 39). Claim 26 is independent; Claims 27 to 31 are dependent. Claim 26 discloses:

> A utility knife comprising a handle and a blade holder, said blade holder being pivotally mounted on said handle for movement from an unfolded position to a folded position, blade holding means on said blade holder for removably holding a blade on said blade holder, said blade holding means comprising blade lock means pivotally mounted on said blade holder, said blade holder comprising a rear end and a front end, said rear end being pivotally mounted to said handle and having upper and bottom edges, means for locking and unlocking said blade holder in said unfolded position whereby unlocking said blade holder permits said movement of said blade holder to a folded position, said handle having a space for receiving at least a portion of said blade holder when the blade holder is in its folded position, said means for locking and unlocking the blade holder comprising, said handle having a pivoted lock lever assembly mounted on said space in the handle, said lock lever assembly having a front arm and a rear arm and a lock finger extending from the front arm and said rear end of the blade holder having a groove therein adapted to receive said lock finger when the blade holder is in its unfolded position.

'022 Patent, Col. 6, Lines 38-58, Exh. A to Plaintiff's Statement of Asserted Claims (docket no. 39-2). The two terms currently in dispute, both of which appear in Claim 26, are "blade holding means on said blade holder for removably holding a blade on said blade holder" and "blade lock means pivotally mounted on said blade holder." Great Neck asked the Court to construe two other terms, one in Claim 26 ("means for locking and unlocking said blade holder") and one in Claim 27 ("spring means are mounted"), as to which Star Asia has taken no position

---

[1] Pursuant to a recent en banc decision of the Federal Circuit, the Court has declined to construe the claims of Great Neck's various design patents. *See* Minute Order dated July 1, 2009 (docket no. 98); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (a district court "ordinarily" should not attempt to "construe" a design patent claim), *cert. denied*, 129 S. Ct. 1917 (2009).

ORDER - 2

1  because the terms are not material to its defenses, and the Court has previously declined to
2  construe these two terms.  *See* Minute Order dated July 29, 2009 (docket no. 103).
3  **Discussion**
4  **A.      General Claim Construction Standards**
5          The Court has the obligation to construe as a matter of law the meaning of language used
6  in a utility patent claim.  *Markman*, 52 F.3d at 979.  In doing so, the Court must consider the
7  intrinsic evidence in the record, meaning the claims, the specification, and the prosecution
8  history.  *Markman*, 52 F.3d at 979.  The words of a claim are generally assigned their "ordinary
9  and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  The
10 ordinary and customary meaning of a claim term is the definition ascribed to it by "a person of
11 ordinary skill in the art in question at the time of the invention."  *Id.* at 1313.  The context in
12 which a claim term is used may also be instructive.  *Id.* at 1314.  For example, if a claim refers to
13 "steel baffles," the language implies that baffles are not necessarily made of steel.  The other
14 claims of a patent may also illuminate the meaning of a term, through *inter alia* consistent usage
15 of the same term, or inclusion in a dependent claim of an additional term not present in the
16 related independent claim.  *Id.* at 1314-15.
17         Claims must also be read in light of the specification.  *Markman*, 52 F.3d at 979.  The
18 specification is "the single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at
19 1315.  If the specification reveals a definition given to a claim term that differs from the meaning
20 it would otherwise possess, the inventor's lexicography trumps the ordinary and customary, or
21 dictionary, construction.  *Id.* at 1316.  In considering the specification, however, the Court must
22 take care not to import limitations from the specification into the claims.  *Id.* at 1323.  The
23 Federal Circuit has repeatedly warned against confining the claims of a patent to the specific
24 embodiments described in the specification.
25         Similar to the specification, the prosecution history evidences how the inventor
26 understood the terms used in the patent.  *Id.* at 1317.  Because the prosecution history, however,

ORDER - 3

represents the "ongoing negotiation" between the United States Patent and Trademark Office ("PTO") and the applicant, it may suffer from a lack of clarity and is often less useful for claim construction purposes than the specification. <u>Id.</u> In addition, although the prosecution history "can and should be used to understand the language used in the claims," it may not itself "enlarge, diminish, or vary" the limitations in the claims. <u>Markman</u>, 52 F.3d at 980.

The Court may, in its discretion, consider extrinsic evidence as an aid in deriving the "true meaning" of the language employed in the patent. <u>Id.</u> (quoting <u>Seymour v. Osborne</u>, 78 U.S. 516, 546 (1871)). Extrinsic evidence may include expert or inventor testimony, dictionaries, and learned treatises. Extrinsic evidence is generally less reliable than intrinsic evidence in construing the claim terms, and the Court must assess such evidence accordingly, bearing in mind the flaws inherent in each type of extrinsic evidence. <u>Phillips</u>, 415 F.3d at 1318-19. Moreover, extrinsic evidence should never be used to vary or contradict the terms of the claims in the patent. <u>Markman</u>, 52 F.3d at 981.

**B.** **Means-Plus-Function Analysis**

A patentee is permitted to express a claim limitation as a means for performing a particular function without including in the claim language the structure that performs the function, as indicated in the following provision of the Patent Act of 1952:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. The quoted provision establishes a "<u>quid pro quo</u>," whereby, in exchange for the ability to make broad, generic claims, a patentee is obligated to "indicate in the specification what structure constitutes the means" for performing the function at issue. <u>See Biomedino, LLC v. Waters Techns. Corp.</u>, 490 F.3d 946, 948 & n.1 (Fed. Cir. 2007).

When a claim incorporates the word "means" to describe a limitation, a presumption arises that the inventor intended to invoke § 112, ¶ 6. <u>Biomedino</u>, 490 F.3d at 950. This

ORDER - 4

presumption can be rebutted if the claim, "in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety." *Id.* For example, in a case involving a utility patent for a disposable training brief, the Federal Circuit held that the patent drafter's use of the term "means" did not give rise to the § 112, ¶ 6 presumption because the claim sufficiently described the structure supporting the function. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996). In that case, the claim language at issue was "perforation means extending from the leg band means to the waist band means through the outer impermeable layer means for tearing the outer impermeable layer means for removing the training brief in case of an accident by the user." *Id.* at 526-27. While observing that the drafter "was clearly enamored of the word 'means,'" using the term fourteen times in the claim, the Federal Circuit concluded that the word was essentially superfluous; the function of the limitation at issue, namely tearing, was supported by the structure described in the claim, namely perforation extending from the leg band to the waist band. *Id.* at 531. In reaching this result, the Federal Circuit applied the dictionary definition of perforation, namely "one of a number of holes, bored or punched through something . . . to facilitate separation." *Id.*

On the other hand, if the § 112, ¶ 6 presumption arising from use of the word "means" is not overcome, then the related claim terms must be construed as stating means-plus-function limitations. *See Biomedino* 490 F.3d at 950. In such circumstances, the Court must engage in a two-step analysis: (i) the Court must identify the function of the limitation at issue; and (ii) the Court must examine the specification to determine whether structure corresponding to the function can be identified. *Id.* If the specification does not contain structure corresponding to the function of the limitation, then the claim must be deemed invalid as indefinite. *Id.*; *see* 35 U.S.C. § 112, ¶ 2 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.").

**C.     Disputed Claim Terms**

In this case, the two disputed claim terms both incorporate the word "means."  The Court must therefore decide whether the means-plus-function presumption applies and, if so, whether the specification recites the requisite structures corresponding to the functions at issue.

**1.     The § 112, ¶ 6 Presumption Applies**

As to the term "blade holding means on said blade holder for removably holding a blade on said blade holder," Great Neck appears to concede that a function is recited, namely that of removably holding a blade.  *See* Response at 8 (docket no. 80).  As to the limitation "blade lock means pivotally mounted on said blade holder," however, Great Neck contends that the § 112, ¶ 6 presumption does not apply because the words preceding the term "means," namely "blade lock," do not recite a function.  The Court concludes that, in both claim limitations at issue, the word "means" is associated with a particular function.  In patent drafting, the word "means" is a generic term for "structure" or "material."  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 849 (Fed. Cir. 1999) (Rader, J., concurring).  Thus, the phrase "blade holding means," standing alone, should be interpreted as describing a structure for holding a blade.  Likewise, the phrase "blade lock means" ordinarily should be construed as a structure for locking a blade.  If given these definitions, both phrases at issue incorporate a function, and the § 112, ¶ 6 presumption applies unless rebutted.

An ambiguity arises, however, because the term "blade lock" does not use typical function language.  A function is usually stated as a verb in present participle form (ending in "ing").  *Seal-Flex*, 172 F.3d at 849.  The word "lock" is both a noun ("a fastening") and a verb ("to fasten"), *see* Webster's Third New Int'l Dictionary at 1328 (1981), and in the absence of the customary suffix "ing," the intended form of the word (noun or verb) remains unclear.  Great Neck argues that, because the blade at issue is a standard within the industry, having a trapezoidal shape with two notches on the top edge, the structure of a lock for such blade is self-evident and that, therefore, the term "blade lock" conveys a structure, not a function.  Such

ORDER - 6

position ignores the myriad ways in which a blade of this nature could be "locked" into place, including via magnet or adhesive, neither of which must pay any heed to the shape of the blade.

In support of its argument that "blade lock" constitutes a structure rather than a function, Great Neck cites as examples an automotive cup holder and a violin case, which Great Neck asserts take certain forms due to the objects they are designed to carry. Great Neck's analogies do not support its position. Automotive cup holders differ in size, both in terms of depth and circumference, as well as design. Those with wider openings might have a hinged rigid tab, a flexible rubber insert, stepped or staggered walls, a ratchet and pawl assembly, or some other mechanism to provide stability for smaller cups. *See, e.g.*, U.S. Patent No. 5,149,032 (disclosing a "universal cup holder" for use in vehicles and describing prior art devices). Likewise, violin cases are available in various shapes, sometimes but often not conforming to the outline of a violin. *See* Heather K. Scott, "*It's in the Bag*," 92 STRINGS MAGAZINE (Feb./Mar. 2001) (available at http://www.stringsmagazine.com/issues/strings92/coverstory.shtml) (critiquing a variety of violin and viola cases). The diverse options for securing a cup in a vehicle or encasing a violin belie Great Neck's contention that the shape of the object being held dictates the structure of the mechanism holding (or locking) it.

Because structures for holding or locking a blade can take various forms and accomplish the functions in fundamentally different ways, the Court holds that the phrases "blade holding" and "blade lock" do not themselves disclose structures that one skilled in the art would necessarily understand. *See Biomedino*, 490 F.3d at 953 ("The inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure. . . . [A] bare statement that known techniques or methods can be used does not disclose structure."). Rather, "blade holding" and "blade lock" constitute functions with respect to which, in the '022 Patent, the inventor has made generic "means" claims.

The conclusion that, in connection with the word "means," Claim 26 recites functions does not end the inquiry. The question remains whether the presumption outlined in § 112, ¶ 6 applies or is rebutted. Great Neck takes the latter position, while Star Asia supports the former. With respect to "blade holding means," Great Neck contends that the following language provides adequate structure: "blade holding means on said blade holder for removably holding a blade on said blade holder, said blade holding means comprising blade lock means pivotally mounted on said blade holder." '022 Patent, Col. 6, Lines 41-44. Great Neck asserts that this limitation covers any means of holding a blade wherein the blade lock pivots, and that the pivoting blade lock alone constitutes sufficient structure to rebut the § 112, ¶ 6 presumption. The Court disagrees. Within the quoted clause, a function is stated ("removably holding a blade"), a location is provided ("on said blade holder"), and a component is mentioned ("blade lock means pivotally mounted"), but no other structure is described. The identification of a function, a location, and one component, the structure of which is itself ill-defined, is not enough to overcome the presumption of § 112, ¶ 6. To hold otherwise would effectively "vitiate the language of the statute," which requires "corresponding structure." *Biomedino*, 490 F.3d at 953.

Turning to a "blade lock means," Great Neck argues that structure is recited in the language "blade lock means pivotally mounted on said blade holder," *see* '022 Patent, Col. 6, Lines 43-44, that the limitation extends to all pivotally mounted blade locks, and that the means-plus-function presumption does not apply. Great Neck's contentions lack merit. The quoted phrase does not describe any structure; it identifies only a location for the "blade lock means." The words "pivotally mounted on said blade holder" inform the reader merely that the blade lock means is attached to, and pivots with respect to, the blade holder; the phrase offers no guidance concerning even the fundamental nature of the blade lock, whether it be in mechanical, chemical, electromagnetic, or some other form. Such language is simply insufficient to particularly point out and distinctly claim the invention as required by § 112, ¶ 2. Thus, the

1 Court holds that the means-plus-function presumption is not rebutted and it must be applied in
2 construing both of the claim terms at issue.

### 2. The Specification Contains Corresponding Structures

With regard to the two-step process applicable when the means-plus-function presumption applies, the analysis does not require much effort in this case. The parties do not appear to disagree concerning what particular functions relate to the two disputed claim terms, namely holding a blade and locking a blade. Moreover, the parties have identified no dispute concerning which structures correspond to those two functions. With reference to the preferred embodiment, the specification contains the following descriptions:

> The front end **32** of the blade holder **3** comprises a thin main wall **34** and a thin guard wall **35** pivotally mounted on the main wall **34** on pivot pin **36**. . . . The main wall **34** has a pair of spaced protrusions **40** extending therefrom into which the upper notches **38** of the blade B are adapted to enter to hold the blade B in place on the main wall **34**.
>
> . . . .
>
> The blade lock assembly **45** in the form of a u-shaped clip having a segmented or interrupted top wall **48**, a pair of side walls **49** depending for the top wall **48** and a front finger tab **50** extending forwardly therefrom.

'022 Patent at Col. 2, Lines 54-61 & Col. 3, Lines 1-5. The specification also provides the following illustration:



'022 Patent at Fig. 6.

ORDER - 9

Based on the language of the specification and illustrations of the preferred embodiment, the Court interprets the disputed claim terms as follows:

(1) "blade holding means on said blade holder for removably holding a blade on said blade holder" is construed as "blade holding means comprising a thin main wall, a thin guard wall pivotally mounted on the main wall, and a pair of spaced protrusions extending from the upper portion of the main wall,[2] said blade holding means being on said blade holder for removably holding a blade on said blade holder"; and

(2) "blade lock means[3] pivotally mounted on said blade holder" is construed as "blade lock means comprising a u-shaped clip having a segmented or interrupted top wall, a pair of side walls, and a finger tab extending out from a side wall, said blade lock means being pivotally mounted on said blade holder."

Given these constructions, the specification particularly points out and distinctly claims the subject matter of the invention, as required by the Patent Act of 1952, specifically 35 U.S.C. § 112, ¶ 2. Thus, the means-plus-function analysis does not render the patent invalid for indefiniteness.

---

[2] According to Claim 26, in addition to the components outlined in the Court's construction, namely a thin main wall, a thin guard wall pivotally mounted on the main wall, and a pair of spaced protrusions extending from the upper portion of the main wall, "blade holding means" also contains "blade lock means." *See* '022 Patent at Col. 6, Lines 42-43 ("blade holding means comprising blade lock means"). To avoid redundancy, the Court has not included "blade lock means" within its construction of "blade holding means on said blade holder for removably holding a blade on said blade holder"; the term being construed by the Court is followed by claim language indicating that "blade lock means" is also an element of "blade holding means."

[3] Star Asia contends that the term "blade lock means" is a misnomer because, absent the two spaced protrusions that are part of the blade holding means, the pivoting member or clip described as a "blade lock means" would not actually keep the blade from falling out of the blade holder. In other words, without the pair of protrusions, which fit into the spaced notches of the trapezoidal-shaped blade, the blade would easily slide out from between the main wall and guard wall otherwise forming the blade holding means, regardless of whether the "blade lock means" was open or closed. Star Asia's hypothesis about the effect of removing the protrusions is probably correct, but the Court is satisfied that, in the presence of the protrusions, the pivoting member or clip at issue serves the function of locking the blade into the blade holding means and blade holder. The Court therefore has no quarrel with the patentee's nomenclature.

ORDER - 10

1    IT IS SO ORDERED.

2    The Clerk is directed to send a copy of this Order to all counsel of record.

3    DATED this 12th day of August, 2009.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge